IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )    Criminal Case No.  2:21CR60 (RCY) |
| | ) |
| KEANU CHRISTOPHER CAINE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), filed by counsel on November 6, 2023 (ECF No. 45) ("Motion").[1] The United States has responded (ECF No. 52), and though Defendant did not reply to the United States' response, Defendant has filed two supplemental memoranda in the form of letters to the Court (ECF Nos. 55, 56). The Court has reviewed these pleadings and all exhibits, and the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

**I. BACKGROUND**

Keanu Christopher Caine ("Defendant" or "Caine") was named in a three-count indictment returned by a federal grand jury sitting in Norfolk, Virginia on May 7, 2021. ECF No. 1. On September 23, 2021, Defendant pled guilty to Counts One and Three of the indictment. ECF No. 19. Count I charged Defendant with Felon in Possession of Firearm, in violation of 18 U.S.C. § 922(g)(1), and Count III charged Defendant with Possession, Use, and Carrying of a Firearm in

---

[1] Pursuant to the Court's Order dated July 27, 2023 (ECF No. 41), this counseled Motion supplanted the *pro se* Motion filed by the Defendant on July 24, 2023 (ECF No. 40). Accordingly, the disposition of the counseled Motion controls the disposition of the *pro se* Motion.

Furtherance and in Relation to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). ECF No. 1.

On January 21, 2022, Defendant was sentenced to 90 months of incarceration—60 months on Count III and 30 months on Count I, to run consecutively—and 5 years of supervised release. ECF No. 35.  Defendant received a sentence at the low end of the Sentencing Guidelines range of 90-97 months.  PSR, ECF No. 30 at 23.  Currently, Defendant is 29 years old and has served approximately 60 months of his sentence, with a projected release date of November 8, 2027.  *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited October 31, 2025).  Since filing his Motion for Compassionate Release, Defendant has transferred prisons from UPS Hazleton to FCC Butner.  *Id.*

The incident leading to Defendant's arrest occurred on October 30, 2020, when he was found with a gun and drugs at a hotel in Chesapeake, Virgina.  ECF No. 22. Defendant had previously been convicted of a felony and had not had his right to possess a firearm restored.  *Id.* the drugs found on Defendant amounted to 252 grams of marijuana s well as several prescription pills that tested positive for Mirtazapine and Hydroxyzine.  *Id.*  Upon his arrest, officers searched Defendant's apartment and recovered an additional 269 grams of marijuana.  *Id.*

On October 4, 2022, Defendant submitted a request to the warden of UPS Hazleton seeking compassionate release, pursuant to 18 U.S.C. § 3582.  ECF No. 45.  On July 24, 2023, Defendant wrote to the Court seeking the same relief.  ECF No. 40.  Defendant, through counsel, filed his Supplemental Motion for Compassionate Release on November 6, 2023.  ECF No. 45. Defendant states that he has satisfied the exhaustion requirement, as more than 30 days have passed since he filed his request for compassionate release with the warden at UPS Hazleton. ECF No. 45 at 6. The Court notes that the United States does not address whether Defendant properly exhausted his

administrative remedies in its response. Given that the United States has not contested Defendant's assertion that he has exhausted his administrative remedies, the Court will consider Defendant eligible to file the instant Motion.

In his Motion, Defendant argues that his "sustained health issues, limited access to rehabilitative resources, and his compliance with this Court's recommendations" constitute "extraordinary and compelling reasons" and warrant compassionate release. Mot. Comp. Release, ECF No. 45 at 1. Defendant contends that his medical conditions have been "exacerbated" while in Bureau of Prisons ("BOP") custody, *id.* at 7, and that his conditions and diagnoses "place him at an especially high risk of complications from contracting COVID-19," which Defendant maintains is a continuing threat at BOP facilities. *Id.* at 11. Defendant further argues that compassionate release in his case is consistent with the factors set forth in 18 U.S.C. § 3553(a) due to his history, characteristics, and rehabilitation while incarcerated. *Id.* at 13–16.

The United States opposes Defendant's Motion on the grounds that Defendant does not have a medical condition that qualifies as an "extraordinary and compelling." Resp. Opp'n Mtn. Comp. Release 1, ECF No. 52. The United States argues that Defendant has access to mental health treatment, chronic care treatment, immunizations, and comprehensive physical examinations, such that his conditions can be effectively managed by BOP medical providers. *Id.* at 7; *see* Encls. B and C, ECF Nos. 52-2, 52-3. The United States also contends that Defendant has not demonstrated that he faces a particularized susceptibility to COVID-19, highlighting Defendant's refusal of the COVID-19 vaccine. Resp. Opp'n Mtn. Comp. Release 8. Further, the United States insists that the factors set forth in 18 U.S.C. § 3553(a) do not support release and emphasize the seriousness of Defendant's offense and his lengthy criminal history. *Id.* at 11–13.

## II. LEGAL STANDARD:  COMPASSIONATE RELEASE
## UNDER THE FIRST STEP ACT OF 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A)(i).  Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id.*  Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id.*

### A. "Extraordinary and Compelling" Standard

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019).  In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281.  Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court after the Fourth Circuit's decision in *McCoy*, many courts still treat § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," though they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)–(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Similarly, a defendant may be released based on age, family circumstances, or where "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]." § 1B1.13, cmt. application note 1(D). A defendant may qualify for compassionate release based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Family circumstances potentially giving rise to grounds for compassionate

5

release include when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, cmt. application note 1(C).

While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted). "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.* "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.* To establish the existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19,[2] a defendant generally must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

---

[2] Defendant argues that he is at a higher risk for severe illness from COVID-19 due to "each of his health conditions." Mot. Comp. Release, ECF No. 45 at 12. As noted *infra*, those conditions are hyperlipidemia, hypertension, post-traumatic stress disorder, opioid use disorder, and an enlarged heart. *Id.* at 7–8.

**B. 3553(a) Considerations**

Even if extraordinary and compelling reasons exist for a reduction in sentence, 18 U.S.C. § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)–(2).

The Fourth Circuit provided additional guidance in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). It explained that the district court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present in [the defendant's] case." *Id*. at 332. In his concurring opinion, Chief Judge Gregory made clear that the district court may not "fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence." *Id*. at 335 (Gregory, C.J., concurring). "Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon a motion for compassionate release than they did at the initial sentencing." *Id*. "If a district court's original § 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a nullity." *Id*. Judge Gregory notes that "[a] day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be," and that "[t]hese conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect." *Id*. at 336.

7

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[3] U.S.S.G. § 1B1.13(2). As noted above, pursuant to *United States v. McCoy*, the policy statement is not binding, but it nevertheless provides useful guidance.

In sum, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

---

[3] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

## III. ANALYSIS

Caine filed his initial request for compassionate release with the warden of his prison facility, and the present Motion followed more than thirty days after this initial submission. Mot. Comp. Release at 1. For procedural purposes, the Court will accept that Caine has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). After a careful review of the Motion, response in opposition, exhibits, and other related documents, including in particular Caine's medical records, the Court concludes that Caine's health conditions do not support a finding of extraordinary and compelling reasons for a reduction in his sentence, and further that, even were the Court to find extraordinary and compelling reasons for compassionate release, the 3553(a) factors do not support a reduction in Caine's sentence.

### A. Caine Has Not Identified Extraordinary and Compelling Reasons for Release

To determine whether Caine has established the existence of an "extraordinary and compelling" reason for compassionate release based on his medical profile, the Court considers whether his conditions are "terminal . . . with an end of life trajectory" or if they "substantially diminish[] the ability of the defendant to provide self-care within the environment of the correctional facility and from which [the defendant] is not expected to recover." U.S.S.G. § 1B1.13, application note 1(A). Further, when considering whether the COVID-19 pandemic creates extraordinary and compelling reasons for compassionate release, the Court considers whether Caine has shown "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling*, 453 F. Supp. 3d at 841 (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020) (denying motion for compassionate release, because the defendant failed to show that his "individual conditions of

confinement—as opposed to those conditions that the inmates generally are subject to—are such as to justify relief")).

The medical records indicate that Caine has hyperlipidemia, hypertension, post-traumatic stress disorder, opioid use disorder, and an enlarged heart. Mot. Comp. Release 7–8, Caine Medical Records, ECF No. 45-1. However, the medical records also indicate that these conditions appear to be well-managed and otherwise not sufficiently troubling. Caine is prescribed several medications for his hyperlipidemia and hypertension. Caine Medical Records 5. Further, Caine has been seen several times by BOP's medical providers for both physical and mental health issues. *Id.* at 3, 8. While Caine has serious medical conditions that require continued treatment, these conditions are being properly treated and are not so severe as to provide an extraordinary and compelling reason for a reduction in his sentence.

The Court further finds that Caine has not shown extraordinary and compelling reasons for release as a result of the COVID-19 pandemic. Caine argues that, due to his medical conditions, he faces an increased vulnerability to COVID-19. Mot. Comp. Release 12. Fear arising from potential vulnerability is not the litmus test, however. *See Feiling*, 453 F. Supp. 3d at 841 ("'[T]he fear of contracting a communicable disease' proves insufficient to justify a sentence modification.") (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020). Though Caine cites various cases[4] where compassionate release has been granted to individuals

---

[4] Three of the cases Caine cites from within this jurisdiction are easily distinguishable from the instant matter. In *United States v. Hussain*, 2021 WL 3367822 (D. Md. Aug. 3, 2021), compassionate release was granted to a defendant with hypertension, hyperlipidemia, obesity, moderate asthma, pre-diabetes, and a history of smoking. Two notable distinguishing factors in *Hussain* were: (1) the defendant there was vaccinated, while Caine refused the vaccine, and (2) the defendant's immigration detainer presented "unique circumstances" whereby the defendant would be released to the detainer and deported, rather than released into the community. *Id.* at *4–*5.

In *Benn v. United States*, No. 2:17-cr-30, ECF No. 122 at 6 (E.D. Va. May 26, 2020), a petitioner with hypertension, rheumatoid arthritis, and sarcoidosis was granted compassionate release, but primarily on the basis of her sarcoidosis, which affected her lungs and immune system. Caine does not have a similar respiratory condition.

with his health conditions as well as articles and statistics about COVID-19 in prison settings broadly, Caine has not demonstrated that he himself has a *particularized* susceptibility to COVID-19, or that he has a particularized risk of contracting COVID-19 at his *specific* facility. *See Feiling*, 453 F. Supp. 3d at 841.

CDC guidance regarding pre-existing medical conditions and COVID-19 distinguishes between individuals with certain conditions who "*are* more likely to get very sick from COVID-19" and those whose conditions "*can* make [them] more likely to get very sick from COVID-19." *See* People with Certain Medical Conditions, CDC (last updated Jan. 26, 2023) (emphases added).[5] According to the CDC, Caine's conditions—hyperlipidemia, hypertension, post-traumatic stress disorder, opioid use disorder, and an enlarged heart —belong to the latter, more speculative category. Moreover, where a defendant is receiving medical treatment to manage his medical conditions, as Caine is for his hypertension and hyperlipidemia, courts have found that these conditions do not establish a particularized susceptibility to COVID-19. *See United States v. Reid*, No. 2:02cr172, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020) (hypertension was being treated so defendant was not "particularly susceptible to COVID-19"); *Barrett v. United States*, No. 4:15cr47, 2020 WL 6206008, at *3 (E.D. Va. Oct. 22, 2020) (hypertension combined with defendant's age and medical treatment to manage his hypertension does not place him at increased

---

Further, in contrast to Caine, the petitioner in *Benn* was convicted of non-violent offenses and maintained good conduct in prison. *Id.* at 7.

In *United States v. McLean*, No. 1:97-cr-163, ECF No. 46 at 3 (E.D. Va. Apr. 23, 2021), petitioner was granted compassionate release due to his hypertension, chronic leukopenia, leaky valve, and chronic kidney disease. However, the defendant in *McLean* was immunocompromised due to his chronic leukopenia, was 52 years old, which put him at a greater risk of serious infection, and had only minor disciplinary infractions in his 24 years of incarceration. *Id.* at 3–5.

[5] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

11

risk); *McKenith v. United States*, No. 7:14cr26, 2021 WL 4527243, at *5 (E.D.N.C. Oct. 4, 2021) (compassionate release denied despite heart conditions and hypertension, where treatment for those conditions was available while defendant served his sentence); *United States v. Volious*, No. 3:17cr575, 2020 WL 5988143, at *3 (D.S.C. Oct. 8, 2020) (compassionate release denied despite potentially heightened COVID-19 risk due to heart conditions, sleep apnea, and asthma); *United States v. McKay*, No. 18CR305, 2020 WL 7398865, at *4 (D. Md. Dec. 17, 2020) (compassionate release denied despite inmate having hypertension and borderline obesity, in part due to defendant's "relatively young age" counterbalancing other COVID-19 risk factors).

Moreover, BOP offered Caine the Moderna COVID-19 vaccine on August 4, 2022, but Caine declined to be vaccinated. Resp. Opp'n Mtn. Comp. Release 4; Encl. A, ECF No. 52-2 at 60. Caine provides no explanation for why he refused the COVID-19 vaccine. The Court finds that his refusal substantially undermines his assertion that extraordinary and compelling reasons exists to warrant his release. *See United States v. Greene*, No. 3:17cr134, 2021 WL 1969453, at *3 (E.D. Va. May 17, 2021) (finding that a defendant who "refused to be vaccinated when offered the opportunity" failed to establish a particular risk); *United States v. Romero*, 2022 WL 5250186 at *2 n.5 (D. Minn. Oct. 6, 2022) ("Regardless of his reasons for doing so, the Court is not persuaded that his health conditions and vulnerability to COVID-19 are extraordinary and compelling enough to warrant a reduction in his sentence when Romero voluntarily chooses to reject the vaccine and remain at an elevated risk of infection."); *see also United States v. Deleston*, Cr. No. 15-113, 2021 WL 1731779, *2 (S.D.N.Y. May 3, 2021) (collecting cases holding that refusing effective vaccination weighs against release).

Finally, Caine has not demonstrated that he faces a particularized risk of contracting COVID-19 at his specific prison facility. Caine concedes that COVID-19 is no longer considered

a public health emergency but insists that this "does not make the threat of infection any less salient." Mtn. Comp. Release 11. According to Caine, correctional and detention facilities are settings that continue to have a "substantially increased risk of transmission of COVID-19," and his health conditions put him at an even greater risk that he would be greatly affected by a COVID-19 infection. *Id.* at 11–12. Caine further emphasizes that "the future trajectory of the COVID-19 pandemic is anything but predictable." *Id.* at 12 (citing *United States v. Roberts*, 2022 WL 9974412, at *16 (D. Md. Oct. 17, 2022)).

Caine asserts, without particularity, that he is at risk of contracting COVID-19 due to his health conditions and the ongoing existence of COVID-19. Thus, Caine's request for compassionate release is grounded in the mere possibility that COVID-19 will spread to his facility.[6] However, as courts in this district have articulated, "the threat of COVID-19 exists both in and outside of prison walls, and Defendant's fear of contracting COVID-19 cannot justify his release." *Feiling*, 453 F. Supp. 3d at 842. Absent a showing of particularized risk of contracting COVID-19 within his specific prison facility, the Court cannot grant Caine's request for compassionate release.

The Court acknowledges that the BOP's latest COVID-19 data has not been updated since January 21, 2025. *See* "Inmate COVID-19 Data: Latest COVID-19 Data," *available at* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData (last visited October 31, 2025). While this information does not provide a present-day snapshot of the conditions Caine currently faces at FCC Butner, this data does indicate that COVID-19 conditions

---

[6] As noted *supra*, Caine was transferred from UPS Hazleton to FCI Butner during the pendency of his Motion for Compassionate Release. The Court notes that Caine's Motion fails to speak to his particularized risk whatsoever—his argument rests entirely on generalized statements about the risk of contracting COVID-19 at *any* BOP facility. As such, Caine's Motion does not establish a particularized risk of COVID-19 at UPS Hazleton, FCI Butner, or any other BOP facility.

at BOP facilities nationwide have improved considerably since the height of the pandemic. At FCI Butner specifically, over half of the inmate population has been immunized for COVID-19, and reported active cases of COVID-19 are low or nonexistent. *See id*. Based on these figures, and notwithstanding Caine's arguments about the risks posed by COVID-19 variants or the risks inherent in the general prison environment, the Court finds that Caine does not face a particularized risk of contracting COVID-19 at FCI Butner.

Based on Caine's failure to demonstrate particularized risk, either personal or at his facility, the Court finds that Caine has not established an extraordinary and compelling reason for a reduction in his sentence.

**B.  The 3553(a) Factors do not Support a Reduction in Caine's Sentence**

Moreover, even if the Court found that Caine had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements. The Court finds that a reduction in Caine's sentence would in fact undermine the relevant § 3553(a) factors. In particular, a reduction in Caine's sentence at this time would undermine the need for the sentence to reflect the seriousness of the offense and protect the public from a danger to the community, promote respect for the law, and afford adequate deterrence, given the nature and circumstances of the underlying offense and Caine's history and characteristics.

Caine was indicted on firearm and drug trafficking charges and pled guilty to two of those charges. As recited previously, Caine received a sentence of 90 months, at the low end of the Sentencing Guidelines range of 90-97 months. PSR, ECF No. 30 at 23. Caine has been

incarcerated since October 2020 and has served approximately 60 months, or roughly two-thirds, of his 90-month sentence. He is projected to be released on November 8, 2027.

The Court is not persuaded that releasing Caine now would promote respect for the law and reflect the seriousness of his offense. Of particular concern to the Court is the nature and circumstances of the offense and Caine's criminal history. Caine's offense was serious: he was engaged in drug trafficking and possessed a firearm in furtherance of his drug trafficking enterprise, despite being prohibited from doing so due to his status as a convicted felon. This precise conduct has been found by several courts in this jurisdiction to weigh heavily against release. *See Albury v. United States*, 496 F. Supp. 3d 974 (E.D. Va. 2020) (finding § 3553(a) factors weigh against release where petitioner was convicted of a large-scale drug trafficking crime that he conducted over the course of five years, possessed firearms and often travelled interstate to purchase and sell drugs); *Bryd v. United States*, 2025 WL 395476, at *6 (E.D. Va. Feb. 4, 2025) (finding possession of a firearm in furtherance of drug trafficking crime a "serious offense" that weighed against petitioner's release); *United States v. Prater*, 2021 WL 54364, at *6 (E.D. Va. Jan. 6, 2021) (find that a defendant's willingness to deal drugs on a large scale and to use violence in furtherance of that drug-dealing activity weighed against release).

Further troubling to the Court is Caine's criminal history. As reflected in his Presentence Report, Caine's criminal history includes arrests for possession of Schedule I/II substances, firearm offenses, assault and battery of a family member, probation violations, and violations of pretrial release conditions. *See* PSR ¶¶ 39-49. A review of Caine's record reveals a nearly continuous pattern of criminal behavior, culminating in the instant offense. At the time of his sentencing, Caine had a criminal history category of VI—the highest possible category. PSR ¶ 97.

15

Caine's lengthy record and criminal history category both underscore his serious risk of recidivism.

Caine highlights his efforts at rehabilitation while in prison and desire to receive the training and treatment the Court recommended at his sentencing. Specifically, Caine notes that he has obtained his GED, Mtn. Comp. Release Ex. C, ECF No. 45-3, and has enrolled in a non-residential drug treatment program and Medication Assistance Treatment ("MAT") program. Mtn. Comp. Release 15. Caine states that he is committed to his sobriety, though constant lockdowns at his facility have prevented him from consistently attending his drug treatment program. *Id.* The Court applauds Caine's efforts at self-improvement while incarcerated; however, the Court does not believe that these efforts support a reduction in Caine's sentence. While "[r]ehabilitation can be considered as 'one among other factors,'" it "cannot serve independently as an extraordinary and compelling reason for compassionate release." *United States v. McCoy*, 981 F.3d 271, 286 n.9 (4th Cir. 2020); *see United States v. Hill*, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) ("Congress made clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'") (quoting 28 U.S.C. § 994(t)); *United States v. Bryant*, 720 F.Supp.3d 450, 456 (W.D. Va. Mar. 12, 2024) (finding petitioner's rehabilitation, including completing victim impact class, graduating from 18-month Life Connections Program, and working his way down from high- to low-security placement did not constitute extraordinary and compelling reasons for compassionate release).

Further, the Court notes that Caine's disciplinary record while incarcerated casts serious doubt on his argument for compassionate release based upon his rehabilitation. Caine has received several disciplinary reports while in BOP custody, including citations for possession of drugs/alcohol, being absent from assignment, and most troubling to the Court, assault with serious

16

injury, in which Caine allegedly stabbed another inmate. Probation Memo. 3, ECF No. 51. These disciplinary reports give the Court little confidence that Caine is prepared to be a law-abiding citizen and thus entitled to early release.

Finally, Caine's proposed release plan does not assuage the Court's concerns about the danger Caine poses to the public were he to be granted early release. Caine proposes that he be released to live with his mother in Virginia Beach, Virginia, so that he may receive necessary medical treatment and counseling for his physical and mental health challenges. Mtn. Comp. Release 16–17. Further, because he now has his GED, Caine wishes to enroll in college and pursue a business degree, while also working to provide for his children. *Id.* at 17. While the Court again commends Caine for his desire to better himself and his prospects for the future, the Court notes that this release plan would return Carine to the Tidewater area—the exact area in which he committed his underlying offense and where the associates who engaged him in a life of crime are located. *See Feiling*, 453 F.Supp.3d at 841–42 (denying motion for compassionate release in part because the petitioner committed his offense while at home and wanted to return home to finish his sentence); *Holloman v. United States*, No. 4:14-CR-68, 2020 WL 5913994, at *3 (E.D. Va. Oct. 6, 2020) (expressing concern that defendant's "release plan does not adequately protect the public" where his plan "would have him return to his parents' home—the same location in which the initial offense occurred"). *see also United States v. Mitchell*, 2020 WL 2770070, at *4 ("Absent any evidence supporting defendant's rehabilitation or a detailed release plan imposing conditions to prevent the likelihood of defendant's reoffending . . . defendant has not met his burden to show releasing him to home confinement will not pose a danger to the public."). Caine bears the burden of demonstrating that he would not be a danger to society if released. *See United States v. Beahm*,

2020 WL 4514590, at *3 (E.D.Va. Aug. 5, 2020).  Based on this proposed release plan, however, the Court cannot conclude that Caine has satisfied that burden.

Accordingly, the Court holds that the § 3553(a) factors weigh strongly against release, and Defendant is not entitled to compassionate release.

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that Caine has not established an extraordinary and compelling reason for a reduction in his sentence, or that a reduction in his sentence would be appropriate under the relevant § 3553(a) factors. Accordingly, Defendant's Motion for Reduction in Sentence (ECF No. 45) will be denied.

An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: November 10, 2025
Richmond, Virginia